IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DENNIS JAMES MORROW,               )
                                   )
                Plaintiff,         )
                                   )
v.                                 )    Case No. CIV-17-146-RAW-KEW
                                   )
COMMISSIONER OF SOCIAL             )
SECURITY ADMINISTRATION,           )
                                   )
                Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff Dennis James Morrow (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 51 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a corrections officer. Claimant alleges an inability to work beginning April 25, 2012 due to limitations resulting from back pain.

## Procedural History

On June 23, 2014, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On September 21, 2015, Administrative Law Judge ("ALJ") Deidre O. Dexter conducted an administrative hearing in McAlester, Oklahoma.  On October 28, 2015, the ALJ issued an unfavorable decision.  On February 21, 2017, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  She determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's subjective statements; and (2) refusing to consider Claimant's potential entitlement to a closed period of disability.

## Credibility Determination

In her decision, the ALJ determined Claimant suffered from the severe impairment of degenerative disc disease. (Tr. 45). The ALJ concluded that Claimant retained the RFC to perform light work except he was able to lift, carry, push, and pull up to ten pounds frequently and 20 pounds occasionally; sit for up to six hours in an eight hour workday; was able to stand and/or walk up to six hours in an eight hour workday; should have the option to sit or stand at will without leaving the workstation; should be permitted to use a cane to stand or walk for more than 15 minutes consecutively; was able to occasionally climb ramps and stairs, balance, kneel, crouch, and crawl; and should never climb ladders, ropes, or scaffolds. (Tr. 46).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of ticket seller, dealer account investigator, and counter clerk, all of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 51). As a result, Claimant was found not to be under a disability from April 25, 2012 through the date of the decision. Id.

Claimant testified that he lives with his wife in a mobile home. His wife was employed part-time at a hotel but planned on leaving her job because she had a lump in her breast. (Tr. 63). Claimant states that he quit working because of an accident for

5

which he received worker's compensation. Claimant has a driver's license and drove to the hearing. (Tr. 64). He has not worked since April 24, 2012. (Tr. 66). Claimant received worker's compensation until September but his visits to his pain management doctor are still being paid. (Tr. 68).

Claimant was employed as a corrections officer with the Department of Corrections from September of 2000 until the time he stopped working. Id. He handled the inmates, serving food, transporting inmates, and emergency response. He supervised from two to 11 other corrections officers. He lifted inmates as a part of his employment usually three times a week. (Tr. 69-70). Claimant spent most of his time on his feet either standing or walking while he was working. (Tr. 70-71). He stated that he could no longer work because his feet swell and hurt "like they're on fire, pins and needles." The pain goes all the way up his leg. He also experiences back problems, causing him to bend over. Claimant testified that when he does laundry, he has to get it out of the dryer, set it down, stretch out his back, fold the laundry, and stretch out again. He washes dishes while sitting on a bar stool and has to stretch out before rinsing them off. He estimated that he could carry one gallon of milk but would have to carry one at a time to transport two gallons. (Tr. 71-72). He stated he could carry the gallon of milk from his car to the house as long as it was

6

not too far but he would have to sit down.  (Tr. 73).

Claimant stated he could usually sit for 30 minutes, but then he would have to take a break and stretch and lay back in a recliner.  He could stand for between five and ten minutes before having to sit down.  He has used a cane but he has not had one prescribed by a doctor.  (Tr. 74).  Claimant testified that if he stood for ten minutes, he would have to get into a recliner to stretch out.  (Tr. 75).

Claimant takes Ultram and Norco for his condition.  He testified that the Ultram made him go to sleep while the Norco made him "feel dizzy or drunk feeling."  (Tr. 75).  He has been prescribed Ultram four times per day but if he has to go somewhere, he will not take it because he cannot drive with it.  Claimant is supposed to take Norco four times per day and does regardless of what he has to do for the day if he back is really hurting.  (Tr. 75-76).

Claimant stated that he experienced spasms in his arms and his fingers will draw up, but that he was just getting used to it.  When his fingers draw up, he cannot use them.  He described the condition as "like a cramp."  (Tr. 77).  His fingers cramp "[p]retty much every day."  He rubs them for five or ten minutes  and "finally they'll come loose."  Claimant testified he has not problem with reaching at shoulder level, to the side, or raising them over his

7

head.  (Tr. 78).

Claimant testified that he has problems stooping, kneeling, and crouching.  He can crawl.  (Tr. 79).

He testified that anytime he is in his bare feet such as when showering, his feet swell.  He has to sit down when he gets out of the shower and stretch after he gets dressed.  Claimant stated that he can vacuum but it causes him to be unable to do anything for two days because "it pulls something and everything don't want to work." (Tr. 81).

He goes grocery shopping either alone or with his wife.  He uses the shopping cart as a walker.  He makes shorter, more frequent trips to complete his shopping.  (Tr. 82).  Claimant mows his lawn with a riding lawnmower but he does not weed eat.  (Tr. 83).

Claimant testified that he started with a walker before his first surgery and continued with the device after the surgery. After he had some therapy, he went to a cane which he stated was recommended by the "therapy lady" to help with balance.  (Tr. 84). After Claimant's second surgery, he would walk without a cane but he risked falling.  (Tr. 85).

Claimant clarified that he could reach from a seated position but that, if he tried to stand up and reach, "it's like everything's pulling."  He experiences the feeling from his lower back to his sciatic nerve into his legs.  Id.

8

The ALJ's recitation of Claimant's statements in her decision was extremely brief. She recounted from Claimant's Work History Report as follows:

> According to claimant, he has a permanent limitation on his ability to lift, climb stairs, and bend. (4E/5). Standing for too long hurts the claimant. (4E/7). He also articulated that he has difficulty squatting, reaching, walking, sitting, and kneeling. (4E/10).

(Tr. 46).

The ALJ's recitation of Claimant's testimony at the administrative hearing is even more truncated. She summarized, "He asserted that he cannot maintain many postures, has spasms in his fingers and hands, medication makes him sleepy, and he has leg and back pain. (Hearing testimony)." (Tr. 46-47). The ALJ found the testimony was "not entirely credible", noting that Claimant alleged that he could do home repairs and travel to the convenience store. She also found Claimant continued to work after the alleged onset date. (Tr. 47).

This Court would note that on September 4, 2015, Claimant amended his onset date from March 15, 2012 to April 25, 2012. (Tr. 198). The latter date was the day after Claimant's last date he was employed as a corrections officer. (Tr. 262). Consequently, the evidence does not support the ALJ's finding that Claimant worked after the onset date.

9

Claimant sustained an injury to his lumbar spine at work on January 19, 2012. (Tr. 401). Claimant was diagnosed with disc herniation at L4-5 and L5-S1, bilateral median spinal and lateral stenosis at L4-5 and L5-S1, and instability with Modic disc changes at L4-5. Claimant underwent surgery for bilateral decompressive lumbar laminectomies with partial medial facetectomies and foraminotomies of the L4-L5 and L5-S1 levels with foramiontomies of the L4, L5 and S1 nerve roots bilaterally, complete diskectomy L4-L5 and L5-S1, posterior lumbar interbody fusion L4-L5 and L5-S1 using milled prosthetic bone grafts, bilateral lateral mass fusion L4-L5 and L5-S1 using autogenous bone grafts, augmentation of lateral fusion mass bilaterally with a combination of Infuse and MasterGraft, segmental fixation L4-L5 and L5-S1 using the Savannah titanium pedicle screw system, fluoroscopic placement of pedicle screws at L4, L5, and S1 bilaterally, and intraoperative spinal cord monitoring. (Tr. 406).

Claimant demonstrated sensitivity throughout the left foot region - more in the top of the foot than the bottom. Straight leg raising was "essentially" negative on the left side even though the hamstrings were tight near 90 degrees but he had sensitivity when holding his leg up. He felt pressure on his leg. Straight leg raising was negative on the right at 90 degrees. Claimant showed "appropriate" tenderness in the low back region. His symptoms were

"not resolving very well on the left side."  (Tr. 415).

In visits to his physician, Dr. Don Hawkins, Claimant continued to complain concerning the amount of pain in his lower legs, numbness, burning and tingling and coldness in the legs.  (Tr. 421). Claimant's dysesthesias of the left leg improved but did not resolve.  (Tr. 422).  In March of 2013, Claimant reported that he still stumbled and staggered with weakness in his left leg and a little burning, swelling, and tingling in his feet.  His range of motion was improved by still diminished overall.  Dr. Hawkins recommended a return to work with a 20 pound restriction and alternating between sitting, standing, and walking.  (Tr. 425). Claimant continued to complain of pain and weakness in his back on the left and tenderness in his back as well as pulling and pain in his legs with straight leg raising.  (Tr. 427).

In July of 2013, Claimant underwent a second back surgery with Dr. Hawkins.  (Tr. 433-34).  By August of 2013, he had improved significantly.  (Tr. 436).

In December of 2013, Claimant was found to have back pain with weakness and numbness and limited ambulation.  Upon examination, Claimant had abnormal weakness of dorsiflexion and plantarflexion of the left foot.  He had limited range of motion and tenderness of the low back.  (Tr. 321).

In February of 2014, Claimant reported back pain with weakness

11

and numbness in his legs. (Tr. 318). He continued to demonstrate limited ambulation. (Tr. 319).

In June of 2014, Claimant was observed by the agency interviewer and sitting and getting up from his chair every six minutes during the interview. (Tr. 200).

In December of 2014, Claimant reported that his medication was beneficial but he was having some increasing muscle spasticity and leg pain. His compliance with his medicine regimen was very good. (Tr. 384).

The ALJ failed to include many of these limitations and negative medical findings reflected in the record. Moreover, the limited consideration of Claimant's testimony in the decision failed to consider the totality of his restrictions and the consistency of the claimed limitations with the medical findings. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location,

duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ failed to adequately consider Claimant's testimony in light of the medical record in arriving at her credibility determination. On remand, the ALJ shall affirmatively link the findings on credibility to the record and Claimant's

testimony.

### Consideration of a Closed Period of Disability

A closed period of disability should be considered if the evidence suggests that a claimant's impairments may have been disabling for a period of at least 12 months but a period which started and stopped prior to the ALJ's decision. Gagnon v. Colvin, 2015 WL 1268294, *4 (E.D. Okla)(unpublished). The evidence suggests that during the course of undergoing multiple surgeries such a closed period of disability may have occurred. On remand, the ALJ shall consider whether the medical evidence indicates that a closed period of disability should be assessed.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the case REMANDED for further proceedings consistent with these Report and Recommendation.** The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days

will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE